IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-02177-RBJ-KLM

BILL BARRETT CORPORATION,

    Plaintiff,

v.

YMC ROYALTY COMPANY, LP,
YBC MANAGERS, LLC, and
BAYSHORE ROYALTY, LP.,

    Defendants.

---

### ORDER

---

This order addresses defendants' motions for summary judgment regarding plaintiff's two claims, the first for breach of contract [ECF No. 46], and the second for unjust enrichment [ECF No. 47], in addition to plaintiff's cross motion for summary judgment on its claim for unjust enrichment [ECF No. 58]. Defendants' motion for summary judgment on the contract claim is denied. Because unjust enrichment is pled as an alternative to the contract claim, and the case is scheduled for a bench trial, there is little to be gained by analyzing that claim in advance of trial, and therefore, the Court denies summary disposition of that claim as well.

### BACKGROUND

On December 7, 2012 Bill Barrett Corporation (BBC) sent YMC Royalty Company, LP (YMC) a proposed joint operating agreement regarding its plans to drill an oil and gas well

known as the "Greasewood 11-21H well" in Weld County, Colorado. ECF No. 46 at 1, 3; *see also* ECF No. 46 Ex. 1.

The next month, on January 4, 2013, BBC sent a letter to YMC containing an Authority for Expenditure (AFE) for the Greasewood 11-21H well. ECF No. 46 Ex. 2 at 1. The letter "offer[ed] [YMC] an opportunity to participate in the drilling and completion of the Well by paying [its] proportionate share of the costs to drill, complete and equip the Well." *Id.* As an alternative, BBC "offer[ed] to lease [YMC's] minerals in the section." *Id.*

YMC, represented by Ijaz Rehman, sent revisions to BBC's proposed joint operating agreement on January 14, 2013. ECF No. 46 Ex. 3. BBC and YMC negotiated but did not agree on a proposal and therefore did not execute a joint operating agreement for this well. *See* ECF No. 46 Ex. 7.

Nevertheless, on January 23, 2013 Mr. Rehman signed the AFE proposal letter on behalf of YMC and marked the box for "I/we elect to participate in the drilling of the Greasewood 11-21H Well." ECF No. 46 Ex. 2 at 2. Mr. Rehman also signed the enclosed AFE below an estimate of the project's costs and initialed the last page of the AFE, which estimated YMC's share of the costs as $647,971. *Id.* at 3, 7.

BBC sent another letter on January 30, 2013 to express its intention to drill a nearby oil and gas well known as the "Greasewood 10-20H well." ECF No. 46 Ex. 8. Like the January 4 letter, the letter contained a detailed AFE. *See* ECF No. 57 Ex. A. The letter made clear the intended effect of signing the AFE, writing: "While this is an estimate and actual costs may be higher or lower, execution of the AFE constitutes agreement to pay the actual costs." ECF No. 46 Ex. 8.

On March 29, 2013, Mr. Rehman signed the second proposal letter on behalf of YMC and checked the box for "I/we elect to participate in the drilling of the Greasewood 10-20H well." ECF No. 46 Ex. 7 at 2. He again signed the enclosed AFE below an estimate of the project's costs and initialed the last page of the AFE, which estimated YMC's share of the costs for this well as $913,128. *Id.* at 3–4. YMC's acceptance letter indicated that it proposed the same revised joint operating agreement that it tendered for the Greasewood 11-21H well. *Id.* at 1. However, BBC and YMC did not execute a joint operating agreement for this well either.

The Greasewood 11-21H and Greasewood 10-20H wells have now been drilled, and apparently they were minimally successful. Still, between September 24, 2013 and July 25, 2014 BBC paid defendant Bayshore Royalty, LP (a related limited partnership that was merged into YMC in January 2015) $148,165.26 in royalties from the Greasewood 11-21H well. However, neither YMC, Bayshore, nor anyone else has paid for YMC's share of the drilling costs. ECF No. 7 ¶ 32–38. Therefore, BBC filed this suit under Colorado law for breach of contract or, in the alternative, unjust enrichment. *Id.* ¶ 41–52. YMC has filed a motion for summary judgment on each of BBC's claims for relief. ECF No. 46; ECF No. 47. BBC has filed a cross motion for summary judgment on its unjust enrichment claim. ECF No. 58.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

Defendants seek summary judgment on plaintiff's breach of contract claim on the ground that no contract was ever formed. According to defendants, the proposal letters and AFEs served as unenforceable agreements to agree in the future. Defendants claim that only a joint operating agreement could have bound the company to pay for drilling costs as they were incurred, and the parties' failure to execute such an agreement means that plaintiff can recover its costs only from hydrocarbons produced from the wells. ECF No. 46 at 6–7. I am not persuaded.

Defendants begin by citing a Tenth Circuit opinion for the proposition that an AFE is simply an "estimate of costs without binding effect in the industry." *Cleverock Energy Corporation v. Trepel*, 609 F.2d 1358, 1360 (10th Cir. 1979). However, the court in *Cleverock* was not addressing the exact question presented here. That court faced a different situation in which one participant in an oil and gas drilling project sought to limit his costs to the AFE's estimate. *Id.* The Tenth Circuit affirmed the district court's finding that such *estimates* were not binding in the industry—not that AFEs cannot form a binding contract as a matter of law. *See id.*

In any event the oil and gas industry's customs may have changed since the 1970s, and it is up to this Court to determine the current custom, if any.

Next, defendants cite a Fifth Circuit opinion rejecting the contention that "an AFE, standing alone, constitutes a binding promise to pay a stated share of drilling and completion costs." *Sonat Expl. Co. v. Mann*, 785 F.2d 1232, 1234 (5th Cir. 1986). But this case too is distinguishable. AFEs do not stand alone here; it is the signed letters viewed together with the signed AFEs and the payment of royalties that may evince the existence of a contract. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) ("If an agreement is contained in multiple documents, courts construe those documents together."). Moreover, the AFE in *Sonat* "contains no language which may be taken as a promise . . . to pay a part of the reflected costs." 785 F.2d at 1234. In contrast, the documents here include the words: "I/we elect to participate in the drilling of the Greasewood 11-21H Well," "I/we elect to participate in the drilling of the Greasewood 10-20H well," and "execution of the AFE constitutes agreement to pay the actual costs." ECF No. 46 Ex. 2 at 2; ECF No. 46 Ex. 7 at 2; ECF No. 46 Ex. 8. Last, the *Sonat* court affirmed the district court's conclusion in part because it found that "neither party offered satisfactory evidence of a binding industry custom or practice involving the signing of an AFE by the owner of a working interest who had not signed or ratified the pertinent operating agreement." 785 F.2d at 1235. I cannot say the same at this time because some evidence has yet to be presented to the Court.

Defendants' reliance on the district court opinion in *Huffco Petroleum Corp. v. Massey* is similarly misplaced. 660 F. Supp. 71 (S.D. Miss. 1986), *aff'd*, 834 F.2d 540 (5th Cir. 1987). That case followed *Sonat*, involved no signed proposal letters, and included at best an ambiguous

5

agreement to pay for something (though it was unclear what) with the words: "Payment will be forthcoming." *Id.* at 73, 75–76.

Plaintiff counters these arguments by claiming that under Colorado law AFEs "do not limit or otherwise qualify the consent given to participate in a particular drilling operation." *M & T, Inc. v. Fuel Res. Dev. Co.*, 518 F. Supp. 285, 291 (D. Colo. 1981). But plaintiff also takes that court's words out of context. The *M & T* court faced the same situation found in *Cleverock* and simply rejected the argument that a participant was required to pay only an AFE cost estimate. *Id.* at 289. The court did not confront the question of whether an AFE without a joint operating agreement could form a contract because the parties in that case *had* executed a joint operating agreement. *See id.* at 286. Furthermore, the court based its conclusion in part on the following finding:

> In the oil and gas industry, it is understood and accepted that when one signs an AFE, he is committed to his proportionate share of the necessary costs in drilling to the objective specified in the AFE, unless the parties mutually agree to terminate drilling earlier or to attempt a completion at a shallower formation.

*Id.* 289. Again, the oil and gas industry's present practice is a question for this Court that cannot be resolved by judicial findings in the 1970s and 1980s. So *M & T* does not decide this case either.

Defendants then shift gears to argue that Colorado courts would find the specific documents in this case too indefinite to create enforceable contracts. In Colorado, "[a]n enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prod. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (citing *Denver Truck Exch. v. Perryman*, 307 P.2d 805, 810 (Colo. 1957)). "[T]he terms of a contract must be expressed with a reasonable

6

certainty." *Am. Min. Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 807 (Colo. 1951). "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." *Costello v. Cook*, 852 P.2d 1330, 1332 (Colo. App. 1993) (quoting Restatement (Second) of Contracts § 204); *accord* Colo. Jury Instr., Civil 30:1 cmt. n.2. Additionally, "a contract will not fail for indefiniteness if missing terms can be supplied by law, presumption, or custom." *Winston Fin. Grp., Inc. v. Fults Mgmt., Inc.*, 872 P.2d 1356, 1358 (Colo. App. 1994).

Defendants argue that the proposal letters and AFEs are fatally incomplete because they are silent regarding "(1) when the obligation to pay arises, (2) how and when payment is to be made, and (3) the terms of payment." ECF No. 66 at 6. According to defendants, "[N]ot only are these terms completely missing in the Proposal Letters or AFEs, it is undisputed that the parties were negotiating these terms in a joint operating agreement but never agreed. Plaintiff is trying to enforce a contract the parties were negotiating but never entered." *Id.* at 2. This Court is not convinced.

First, defendants cite to the conflicting proposals for Article VII Sections B and C of the joint operating agreement for their claim that "the parties could not agree about when payment obligations arise, when and how payments are to be made, or the terms of payment." ECF No. 46 at 8. The proposed Section B is titled "Liens and Security Interests." ECF No. 46 Ex. 1. It begins:

> Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it now owns or hereafter acquires in the personal property and

7

> fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement . . . .

*Id.* at 18. Defendants quote a paragraph from Section B in their motion, which in full says:

> If any party fails to pay its share of costs within one hundred twenty (120) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all parties. The amount paid by each party so paying its share of the unpaid amount shall be secured by the liens and security rights described in Article VII.B . . . .

Section C is titled "Advances," and states:

> Operator, at its election, shall have the right from time to time to demand and receive from one or more of the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month . . . . Each party shall pay to Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received.

*Id.* Defendants proposed striking these two sections altogether. ECF No. 46 Ex. 4 at 18. But these provisions do not address when normal payment obligations arise, when or how payments are to be made, or the terms of payment. And this case does not concern liens, security interests, or advances. Plaintiff is simply trying to recoup the drilling expenses that it has already incurred. Thus, defendants' objections to these parts of the American Association of Professional Landmen's 1989 Model Form Operating Agreement are irrelevant here.

Additionally, defendants' citations to undisputed sections of the proposed joint operating agreement further undermine their position that "Plaintiff's proposed joint operating agreement included obligations to pay costs including when and how such payments were to be made." ECF No. 66 at 9. First, under the heading "Rights and Duties of Operator" the proposed joint operating agreement states: "Except as herein otherwise provided, [Plaintiff] shall promptly pay and discharge expenses incurred in the development and operation of the Contract Area pursuant

8

to this agreement and shall charge each of the parties hereto their respective proportionate share upon the expense basis provided in Exhibit 'C.'"  ECF No. 46 at 3 (quoting ECF No. 46 Ex. 1 at 8).  On its face this payment requirement would apply only to plaintiff, not defendants, so it is immaterial.  Second, the section "Liability of Parties" says: "The liability of the parties shall be several, not joint or collective.  Each party shall be responsible *only* for its obligations, and shall be liable *only* for its proportionate share of the costs of developing and operating the Contract Area."  *Id.* at 4 (emphasis added) (quoting ECF No. 46 Ex. 1 at 17).  While this provision would apply to defendants, its only effect would be to *limit* defendants' liability.  Plaintiff does not claim that defendants are liable for more than their proportionate share of costs, so this proposed provision also has no bearing on this case.

Thus, I see no mention of when the normal obligation to pay arises, how and when such payments are to be made, or the terms of payment in the proposed joint operating agreement.  Defendants' claim to the contrary is essential to their argument because they assert in their reply that in Colorado, "Law and/or industry use and custom cannot, as a matter of law, supply missing payment terms of (1) when the obligation to pay arises, (2) when and how payment is to be made, or (3) payment terms."  ECF No. 66 at 11–12 (citing *Stice v. Peterson*, 355 P.2d 948, 952 (1960)).  But if this were true here, then plaintiff and defendants would not have a valid contract even if they *had* executed the proposed joint operating agreement.  That makes no sense at all.

Defendants' focus on the three missing terms condemned by the Colorado Supreme Court in *Stice* blinds them to the reality that those terms appear not to be material to the present contract.  As that court has written elsewhere:

9

> [T]he terms of a contract must be expressed with a reasonable certainty, and what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relations of the parties, and the circumstances under which it was made.

*Am. Min. Co.*, 235 P.2d at 807.  In *Stice*, the court ruled that a unique and complex arrangement was not specified with reasonable certainty.  There a man sold his controlling stock in a company to an investment group, got in a dispute with the group, and later tried to buy back his stock but discovered that the group would not deal with him personally.  355 P.2d at 950.  To get around this obstruction, he allegedly made an oral agreement with another man to help with the repurchase, but he admittedly "was completely uncertain as to what was actually said" by the other man.  *Id.* at 952.  The *Stice* court concluded that the alleged agreement incurably "leaves *all* terms and conditions in doubt."  *Id.* (emphasis added).  "*For example*: When does the obligation arise; when and how is it to be paid; what are the terms of payment?"  *Id.* (emphasis added).

In contrast, the agreement here concerns a seemingly typical venture for drilling an oil and gas well and involves sophisticated parties who presumably have executed similar contracts before.  Under these circumstances, and considering the evidence presently before the Court, I see no reason to believe that a contract for participating in the drilling and completion of an oil and gas well is not "expressed with a reasonable certainty" when it omits payment terms of no apparent consequence to this lawsuit.[1]

---

[1] Defendants argue that plaintiff may recover defendants' share of costs only by withholding revenue from the wells' production. But defendants do not argue that their obligation to pay has not yet arisen or that payment is not yet due; that would be a different argument, one that would mean they would not owe any money yet even if the wells *were* still producing. Defendants also do not advance a plausible argument that plaintiff's requested manner of payment is inappropriate. Where one manner of payment is not available due to impossibility (i.e., withholding nonexistent revenue from nonproducing wells), the Court will not entertain the argument that a viable form of payment (such as a transfer of funds) is

This Court's task is to determine: "(1) if the parties intended [the proposal letters and AFEs] to be a binding contract; and (2) if [their] terms are specific enough to constitute a contract." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 682 (10th Cir. 2001) (unpublished). The plain language of the proposal letters and AFEs suggests that the parties may have intended to form a binding contract, and this understanding would likely be clarified by considering the backdrop of industry practice against which the alleged offer and acceptance took place. *See Gardner v. City of Englewood*, 282 P.2d 1084, 1090 (Colo. 1955) ("Intent is to be determined from the contract itself, *if possible* . . . .") (emphasis added). Moreover, "a contract will not fail for indefiniteness if missing terms can be supplied by law, presumption, or custom." *Winston*, 872 P.2d at 1358. Plaintiff and defendants disagree about the oil and gas industry's custom regarding AFEs and joint operating agreements. *Compare* ECF No. 57 Ex. C, *with* ECF No. 66 Ex. 13. Therefore, there is a genuine dispute as to a material fact that precludes awarding summary judgment to defendants on the breach of contract claim.

## ORDER

Defendants' motions for summary judgment, ECF Nos. 46 and 47, and plaintiff's cross motion for summary judgment, ECF No. 58, are DENIED.

DATED this 23rd day of December, 2016.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

---

improper when a contract is silent on this question. Again, "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." *Costello*, 852 P.2d at 1332.

                R. Brooke Jackson
                United States District Judge